UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRENT J. DENHARTOG,               )
                                  )
          Plaintiff,              )
                                  )
v.                                )          No. 3:15-CV-347-CCS
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social Security,   )
                                  )
          Defendant.              )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16].

Now before the Court is the Plaintiff's Motion for Summary Judgment and Brief in

Support [Docs. 12 & 13] and the Defendant's Motion for Summary Judgment and Memorandum

in Support [Docs. 14 & 15].   Brent J. Denhartog ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn

W. Colvin, Acting Commissioner of Social Security ("Commissioner").

On October 29, 2012, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability that began August 1, 2012.  [Tr. 11, 163].  After his

application was denied initially and upon reconsideration, the Plaintiff requested a hearing.  [Tr.

108].  On August 12, 2014, a hearing was held before the ALJ to review determination of the

Plaintiff's claim.  [Tr. 29-60].  On August 29, 2014, the ALJ found that the Plaintiff was not

disabled.  [Tr. 11-28].  The Appeals Council denied the Plaintiff's request for review [Tr. 1-6];

thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this

Court on August 11, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since August 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disk disease of the lumbar spine, degenerative joint disease, obesity, irritable bowel syndrome, and affective and anxiety disorders (20 CFR 404.1520(c)).

4. The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can sit, stand, and walk six hours each in an eight-hour work day and occasionally climb ladders, ropes, or scaffolding. The claimant can understand and remember simple and detailed tasks: sustain adequate persistence and pace for such tasks over a normal workday and workweek with customary breaks; interact and get along adequately with the general public, coworkers, and supervisors for purposes of tasks completion and respond to changes in a routine work setting given reasonable (defined as customary) support; and make and set work-related plans and goals independently (Exhibit 8F).

6. The claimant is capable of performing past relevant work as a security guard, fast food worker, and assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

2

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2012, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 14-24].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB.  An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled.  42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is

3

suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion." <u>Cutlip v. Sec'y of Health & Human Servs.</u>, 25 F.3d 284, 286 (6th Cir. 1994) (citing <u>Kirk v. Secretary of Health & Human Servs.</u>, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." <u>Buxton v. Halter</u>, 246 F.3d 762, 773 (6th Cir. 2001) (quoting <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case <em>de novo</em>, nor resolve conflicts in the evidence, nor decide questions of credibility." <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984) (citing <u>Myers v. Richardson</u>, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. <u>See Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004).

On review, the Plaintiff "bears the burden of proving his entitlement to benefits." <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.  POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ committed three errors. First, the Plaintiff asserts that the ALJ erred in giving no weight to the opinion evidence of his treating physician. Next, the

5

Plaintiff argues that the ALJ erred by not properly crediting or weighing the Veteran Administration's determination that the Plaintiff is unemployable and entitled to Total Disability Individual Unemployability ("TDIU"). Finally, the Plaintiff asserts that the ALJ erred in giving great weight to the opinions of the non-examining medical consultants.

The Commissioner responds that the ALJ gave good reasons for affording little weight to the Plaintiff's treating physician. Second, the Commissioner argues that the Veteran Administration's disability determination is an adjudicative finding and not a medical opinion to be considered under the regulatory framework of 20 C.F.R. § 404.1504. Finally, the Commissioner asserts that the ALJ considered the evidence as a whole and that the ALJ was justified in giving great weight to the State agency physicians.

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Seema Sharma, M.D.

The Plaintiff argues that the ALJ improperly assigned no weight or little weight to Dr. Sharma's opinion and that the ALJ failed to properly evaluate the Plaintiff's symptoms and medical records. The Plaintiff asserts that the ALJ's conclusions are factually flawed and legally insufficient because the record demonstrates abnormal physical exam findings by Dr. Sharma and other physicians. The Plaintiff avers that the ALJ erred in evaluating the Plaintiff's subjective complaints and symptoms in light of the objective studies and evidence. Finally, the Plaintiff asserts that the ALJ demonstrated a prejudicial attitude toward the opinions of Dr. Sharma.

The Commissioner responds that the ALJ weighed each opinion and that the decision to afford little weight to Dr. Sharma's opinion was justified. The Commissioner asserts that the ALJ

6

provided good reasons for affording Dr. Sharma's opinion little weight. With respect to Plaintiff's argument that the ALJ erred in dismissing Plaintiff's allegations of pain and limitations, the Commissioner responds that the record does not support the extent of limitations as alleged by the Plaintiff. Finally, the Commissioner argues that there is no evidence of bias.

*(a) Treating Physician Rule*

Dr. Sharma was one of the Plaintiff's physician's at the Veteran's Administration. On June 14, 2012, the Plaintiff complained of irritable bowel syndrome and pain in his left knee. [Tr. 427]. The Plaintiff reported that he had an MRI in 2011 and an arthroscopy, but there was no torn meniscus or cartilage. [Tr. 427]. With respect to his knee, Dr. Sharma noted, "Knee ROM Good, Mild Crepitus, No Swelling or Warmth or Effusion. No Joint Instability." [Tr. 429]. She ordered an x-ray of his knee, "capcacian cream," a knee brace, and an orthopaedic consultation. [Tr. 430]. The x-ray showed as follows: "Unchanged, mild medial and anterior compartment osteoarthritis." [Tr. 427]. In addition, Dr. Sharma noted, "No acute superimposed radiographic abnormality currently appreciated." [Tr. 427]. For his complaints of irritable bowel syndrome, she instructed him to take Imodium, and she gave him dietary restrictions. [Tr. 430].

Later, on November 19, 2013, Dr. Sharma noted that the Plaintiff saw the orthopedist after an MRI of his left knee showed, "C[h]ondromalacia-Adv." [Tr. 934]. Dr. Sharma stated that the Plaintiff rejected a steroid injection. [Tr. 934]. Dr. Sharma opined that he needed to seek a "psych" as soon as possible. [Tr. 937]. With respect to his irritable bowel syndrome, Dr. Sharma noted, "IBS with diarrhea-controlled with Imodium, PRN for diarrhea, don't want refill on hyoscynamine/colestipol -not much cramp." [Tr. 937]. With respect to his knee pain, she noted that he is using the cream and the knee brace and is seeing the "ortho." [Tr. 937]. She also noted that the Plaintiff received a steroid injection in the past without improvement. [Tr. 937].

7

On March 28, 2014, Dr. Sharma completed a Medical Assessment of Ability to Do Work-Related Activities. [Tr. 1012-13]. Dr. Sharma opined that the Plaintiff could sit five hours out of the workday and could stand and/or walk only one hour. [Tr. 1012]. She opined that he could occasionally lift 10 pounds, infrequently lift twenty five pounds, and never lift fifty pounds. [Tr. 1012]. In addition, Dr. Sharma noted that he could occasionally twist, push, pull, reach above shoulders, and reach in all directions [Tr. 1013]. She also opined that the Plaintiff had problems with stamina and endurance, which would require him to rest more than one 30 minute break and two 15 minute breaks that are normally allowed. [Tr. 1013]. In addition, Dr. Sharma noted that the Plaintiff's subjective complaints seemed reasonable in view of her observations and diagnosis. [Tr. 1013]. With respect to concentration and/or persistence, she gave him marked limitations. [Tr. 1013]. In addition, she noted that he had extreme limitations with the ability to handle work stress. [Tr. 1013].

In his opinion, the ALJ gave little weight to the medical source statement completed by Dr. Sharma, noting that she was "one of the claimant's main primary care providers throughout the period in question, in March 2014." [Tr. 20]. The ALJ summarized Dr. Sharma's medical assessment but noted, "Although Dr. Sharma received copies of all or most of the VA medical records, she appears to have examined the claimant on annual visits through 2013, but on rare other encounters." [Tr. 21]. The ALJ continued, "My review shows no evaluation by Dr. Sharma after November 2013." [Tr. 21]. The ALJ noted, "Furthermore, the claimant's VA compensation rating does not assess musculoskeletal impairments that should impose such significant exertional and postural limitation." [Tr. 21]. Further, the ALJ stated that "[n]either Dr. Sharma nor the VA compensation determination reconciled their opinions regarding the claimant's impairment-related limitations with his actual work activity through August 2012, which the

8

claimant performed with heavy exertion." [Tr. 21]. The ALJ continued that "[t]he evidence does not show worsening of the claimant's musculoskeletal or gastrointestinal impairments to account for the minimal work capacity the VA and Dr. Sharma indicate." [Tr. 21]. With respect to Dr. Sharma's marked and extreme mental limitations, the ALJ opined as follows: "I gave little weight to Dr. Sharma's assessment of marked and extreme mental limitations, as the claimant remained highly functional working through August 2012, then performing childcare at home, and remaining active in Cub Scouts and in attending church." [Tr. 21].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight to be given to the treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

9

Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

With this analysis in mind, the Court finds that the ALJ gave good reasons for giving Dr. Sharma's opinion little weight. The ALJ explained the frequency at which the Plaintiff treated with Dr. Sharma—that is, a few encounters, although Dr. Sharma had access to the Veteran's Administration's medical records. In addition, the ALJ noted that Dr. Sharma failed to reconcile her opinion regarding the Plaintiff's impairment-related limitations with his actual work activity through August 2012, in which the Plaintiff performed with heavy exertion. [Tr. 21]. The ALJ explained that the evidence does not show worsening of the Plaintiff's musculoskeletal or gastrointestinal impairments to account for the minimal work capacity. [Tr. 21]. With respect to Dr. Sharma's opinion regarding the Plaintiff's mental limitations, the ALJ found that her opinion was contrary to his activities and that the evidence in the record fails to show a decline in his mental or physical function after he lost his job in 2012. [Tr. 21].

The Plaintiff argues that the ALJ's proffered reasons for discounting the opinion is not supported by the records. The Plaintiff states that, for example, the ALJ stated that he "almost never" complained of right knee problems. The Plaintiff then cites to *two* medical records, both of which were two years before the disability date. The Court finds that the ALJ's characterization is not improper. The Plaintiff also asserts that the ALJ wrongly discounted the medical opinions on the basis that the Plaintiff did not complain of left knee or back pain after early 2013. In support of his argument, the Plaintiff cites the following medical evidence: (1) an early 2013 MRI of his left knee, (2) a compensation and pension exam conducted on June 8,

2013, which found back and bilateral knee problems, (3) a surgical consult on October 28, 2013, for his left knee, (4) the Veteran's Administration's rating produced on May 3, 2013, (5) a visit with Dr. Sharma for left knee pain on November 19, 2013, and (6) a physician's visit for back and left leg pain on June 23, 2014.

The ALJ discussed the above evidence and found it consistent with the residual functional capacity evaluation. With respect to the MRI in early 2013, surgery was not recommended. The medical record dated October 28, 2013, with Dr. Parr states: "MRI: chondromalacia, no meniscal tears, no ligament tears, a/p left knee chondromalacia. Nonoperative tx. Declines injections. Activities as tolerated. f/u prn." [Tr. 946]. With respect to the November 2013 appointment, Dr. Sharma noted that the Plaintiff declined a steroid injection but that he was using capacian cream and a knee brace and seeing the orthopedist. [Tr. 934, 937]. Later, on June 23, 2014, the Plaintiff visits the Veteran's Administration for a routine visit. [Tr. 1020]. The Plaintiff complains of back pain and left leg pain. [Tr. 1020]. The Plaintiff reports pain in his left knee for the last couple of weeks, but he only rates his pain as a 2-3 out of 10. [Tr. 1020]. He denied any loss of balance, locking, knee giving out, or swelling. [Tr. 1020]. The Plaintiff stated that he had periodic issues with the knee, "but nothing recently." [Tr. 1020]. Dr. Stovall noted, "Full range of motion bilateral knees. No joint effusions. No midline tenderness noted. Some crepitation of the knee cap of the left knee with some paraspinal tenderness of the lumbar spine. Normal flexion and extension of the lumbar spine." [Tr. 1022]. Dr. Stovall added diclofenac and ice for his knee and low back condition and counseled the Plaintiff about his weight. [Tr. 1023]. The ALJ also noted that this June 2014 diagnostic image showed no change in the lumbar spine when compared to a November 2010 x-ray. [Tr. 19, 1015].

Finally, the Plaintiff argues that the ALJ stated that the record did not show worsening

11

conditions in 2012 with respect to the Plaintiff's irritable bowel syndrome. The Plaintiff points to a medical visit in December 2012, when he was seen for a follow-up after an emergency room visit due to his irritable bowel syndrome. As the Commissioner noted, however, at that follow-up visit, the Plaintiff reported that he was doing much better and was able to keep foods down. [Tr. 819]. The registered nurse told the Plaintiff to eat bland foods for a few days, and the Plaintiff reported that he had been eating bland foods and "it [was] working out well." [Tr. 819]. Accordingly, the Court finds the ALJ's decision is supported by substantial evidence.

*(b) Credibility*

Next, the Plaintiff argues that the ALJ erred in evaluating the Plaintiff's subjective complaints and symptoms and that this improper evaluation led to the incorrect weighing of Dr. Sharma's opinions. In addition, the Plaintiff asserts that the ALJ erred in dismissing the Plaintiff's allegations of pain and limitations. The Commissioner argues that the ALJ did not discount the Plaintiff's testimony entirely but found that the record did not support the extent of limitation as alleged by the Plaintiff.

In his opinion, the ALJ states that he has considered the Plaintiff's statements about his symptoms and that he evaluated them in relation to the objective medical evidence, to the inconsistencies in the evidence, and to conflicts between his statements and other evidence. [Tr. 20]. The ALJ found the Plaintiff to be only partially credible. [Tr. 20]. The ALJ explained that the objective medical evidence showed primarily mild underlying musculoskeletal disorders. [Tr. 20]. In addition, the ALJ summarized the Plaintiff's left knee issues. [Tr. 20]. The ALJ noted that the Plaintiff made few complaints of low back and knee pain during the period in question and that he performed heavy work until August 2012, with no intervening injury to or worsening of his knees or spine. [Tr. 20]. The ALJ also explained that the Plaintiff's irritable bowel syndrome

12

was well-controlled. [Tr. 20]. Finally, the ALJ noted that after the Plaintiff was laid off in August 2012, he became responsible for getting his children to school, watching his children when they were not in school, performing some cleaning and cooking chores, attending church, shopping, and attending weekly Cub Scouts activities. [Tr. 20].

An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant"). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides

13

medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *3.

Finally, the Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree which could satisfy a reasonable fact finder.'" Claiborne–Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843–44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998)).

The Court agrees with the Commissioner. In determining that the Plaintiff was only partially credible, the ALJ explained the objective evidence, the Plaintiff's conservative treatment, the Plaintiff's own reports that he was doing better, and the medical opinions. For example, the ALJ explained that while the Plaintiff has had two surgeries on his left knee before the alleged onset date, "his meniscus is intact, diagnostic imaging shows mild osteoarthritis, and clinical findings are repeatedly normal except for mild crepitus." [Tr. 20]. The ALJ noted that he made few complaints of low back pain and knee pain and that he was performing heavy work up until August 2012, without any intervening injury or worsening of his knees or spine. [Tr. 20]. The ALJ also emphasized that in June 2014, the Plaintiff told his physician that his left knee

14

gives him trouble periodically but none recently. [Tr. 19]. The ALJ also found that his irritable bowel syndrome was well-controlled, relying on medical evidence wherein the Plaintiff reported that his irritable bowel syndrome was better controlled, although he does not take the medications as prescribed. [Tr. 10, 853]. The ALJ also commented that a few days prior to telling his physician that his irritable bowel syndrome was better controlled, the Plaintiff reported to the consultative examiner, Dr. Blaine, that his medications do not really help. [Tr. 19, 798]. Finally, the ALJ explained the Plaintiff's daily activities and found it inconsistent with marked limitations. [Tr. 20]. The Court finds that in evaluating the Plaintiff's subjective symptoms, the ALJ did not commit error.

### (c) Prejudice

The Plaintiff argues that the ALJ demonstrated a prejudicial attitude to the opinions of Dr. Sharma. The Plaintiff asserts that during the hearing when reading Dr. Sharma's report the ALJ used the words, "yadda, yadda, yadda, yadda." In addition, the Plaintiff asserts that the ALJ commented that Dr. Sharma's lifting limitation of "infrequently" was "meaningless."

The Commissioner responds that the use of "yadda, yadda, yadda, yadda" does not indicate bias, but rather a common verbal tool used when skipping non-relevant information. In addition, the Commissioner asserts that the ALJ did not dismiss the lifting limitation but rather converted the limitation to the correlating terms used by the agency.

"When considering a claim that an ALJ's decision is colored by bias, the Court must begin with the 'presumption that policymakers with decision making power exercise their power with honesty and integrity.'" Campbell v. Colvin, No. 13-25-GFVT, 2014 WL 4928903, *2 (E.D. Ky. Sept. 30, 2014) (quoting Collier v. Comm'r of Soc. Sec., 108 F. App'x 358, 363-64 (6th Cir. 2004)) (other citations omitted). The burden of overcoming this presumption rests with

15

the party making the assertion of bias. Id. (citing Collier, 108 F. App'x at 363-64). "[T]he presumption can be overcome only with convincing evidence that a 'risk of actual bias or prejudgment' is present." Id. (citing Collier, 108 F. App'x at 363-64). Further, "any alleged prejudice on the part of the decision maker must be evidence from the record and cannot be based on speculation or inference." Id. (citing Collier, 108 F. App'x at 363-64).

As an initial matter, the Court finds the Plaintiff's argument untimely. As stated in Campbell, "If [the plaintiff] felt that she was being deprived of a fair hearing, the proper procedure would have been for her to request the examiner to withdraw from the case." Id. at *3. The court noted that the plaintiff had "essentially waivered her right to object to the conduct of the examiner now." Id.; see also Wells v. Apfel, 234 F.3d 1271 (6th Cir. 2000) ("Thus, the appellant's failure to request withdrawal of the examiner during the hearing or in her request for review before the Appeals Council constitutes a waiver of her right to object to the conduct of the examiner.").

In a similar vein, the Court has reviewed the Plaintiff's appeal to the Appeals Council [Tr. 7-10] and finds that he failed to make any allegations of prejudice. Nevertheless, the Court has reviewed the transcript of the hearing before the ALJ. During the hearing, the ALJ states as follows:

> We got a report this Dr. Sharmer [sic] [phonetic] says – yadda, yadda, yadda, that the claimant could, let's see 12F. Okay in it the doctor says, "Sitting five hours in an eight hour day, standing one hour, walking one hour, lifting one to 10 pounds," we don't have a category for infrequent and when you stick it in there I'm just going to consider it to be meaningless, since it's not defined by anything. So I will bump everything sideways and we'll say 1 pounds to 10 pounds occasionally, no, that would be frequently. One to 10 pounds frequently and 10 to 25 pounds occasionally . . .

16

[Tr. 52]. The Court finds that the terminology used, was used merely to skip over the lengthy prior portion of the report and that Plaintiff has not met his burden in establishing bias on the part of the ALJ. Moreover, the Court finds that the ALJ did not dismiss the limitation, but as the Commissioner noted, simply converted the limitation. Accordingly, the Court finds the Plaintiff's argument not well-taken.

### B. Veteran's Administration's Decision

The Plaintiff argues that the ALJ improperly credited or weighed the Veteran's Administration's ("VA's) determination that the Plaintiff was totally disabled. The Plaintiff acknowledges that the VA's determination is not binding, but argues that the ALJ merely discussed the VA's determination using meaningless boilerplate language. The Plaintiff submits that such meaningless boilerplate language is not legally sufficient. In addition, the Plaintiff asserts that the hearing transcript reveals the ALJ's prejudicial attitude toward veterans and disability.

The Commissioner responds that the VA's disability determination is an adjudicative finding and not binding on the Commissioner. Quoting from the SSA Administrative Message, the Commissioner argues that the VA's disability determination is of "generally limited evidentiary value without consideration of the supporting evidence on which the rating was based." [Doc. 15 at 16]. The Commissioner argues that the ALJ discussed the VA's disability determination in detail and noted that the findings were inconsistent with the evidence. The Commissioner asserts that the ALJ's discussion was not meaningless boilerplate but rather a reasonable analysis.

On January 8, 2014, the VA granted the Plaintiff entitlement to individual unemployability, effective May 3, 2013. [Tr. 894]. The VA issued the following ratings: (1) 10

17

percent to the Plaintiff's left knee; (2) 30 percent for his abdominal pain due to irritable bowel syndrome and chronic cholecystitis and cholelithiasis; (3) 10 percent for his degenerative disk disease; and (4) a 10 percent for his right knee. [Tr. 894-95]. The VA concluded, "Entitlement to individual unemployability is granted because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." [Tr. 896].

With respect to the VA's compensation rating, the ALJ noted that it failed to assess musculoskeletal impairments that should impose such significant exertional and postural limitation. [Tr. 21]. The ALJ found that the rating of 10 percent for the Plaintiff's left knee, right knee, and lumbar spine well-supported. [Tr. 21]. The ALJ explained that the Plaintiff almost never complained of right knee problems and complained rarely of left knee and back problems after early 2013. [Tr. 21]. In addition, the ALJ noted that the Plaintiff refused some treatment that was offered. [Tr. 21]. The ALJ also explained that the VA's compensation rating failed to reconcile the Plaintiff's impairment-related limitations with his actual work activity through August 2012, which was performed with heavy exertion. [Tr. 21]. The ALJ continued that the evidence does not show worsening of the Plaintiff's musculoskeletal or gastrointestinal impairments. [Tr. 21]. With respect to the VA's compensation rating of 30% for the Plaintiff's irritable bowel syndrome, the ALJ gave it little weight. [Tr. 21]. The ALJ explained that the pertinent medical records after July 2012 suggest that Plaintiff's symptoms are controlled with medication, using only "over-the-counter Imodium by November 2013." [Tr. 21]. The ALJ stated that he considered the VA compensation ratings but that he has applied the Social Security regulations and standards, which differ significantly from the VA's regulations. Further, the ALJ noted that the VA assessed 30% for post-traumatic stress disorder at one point, but noted evidence that the Plaintiff exaggerated on a post-traumatic stress disorder evaluation in January

18

2014. [Tr. 21]. The ALJ repeats, "I have considered the VA compensation ratings, including the issue of the claimant's employability, but have applied the Social Security regulations and disability standards to this claim, which differ significantly from the VA's." [Tr. 21].

The Sixth Circuit has acknowledged that no specific standard has been set forth concerning the weight that an ALJ should give to a VA determination. LaRiccia v. Comm'r of Soc. Sec., 549 F. App'x 377, 387 (6th Cir. Dec. 13, 2013). "[T]he Commissioner may nonetheless find an agency's determination relevant, depending on the similarities between the rules and standards each agency applies to assess disability." Id. (citing SSR 06-039, 2006 WL 2329939, at *7 (Aug. 9, 2006) ("[B]ecause other agencies may apply different rules and standards than we do for determining wehtehr an individual is disabled, this may limit the relevant of a determination of disability made by another agency."). The Sixth Circuit instructed courts that SSR 06-03p requires that the ALJ explain the consideration given to a VA disability determination. Id. at 388.

In the present matter, the Court finds the Plaintiff's argument not well-taken. As mentioned above, the ALJ summarizes the percentages given by the VA and explains why weight was or was not given to certain percentages. [Tr. 21]. The ALJ noted that he credited the 10 percent rating for the Plaintiff's left knee, right knee, and lumbar spine because the Plaintiff almost never complained of right knee pain and rarely complained of left knee and back pain after 2013. [Tr. 21]. The ALJ noted, however, that the VA compensation determination failed to reconcile its opinion regarding the Plaintiff's impairment-related limitations with his actual work activity through August 2012, when he was performing heavy exertion work. [Tr. 21]. The ALJ continued that the evidence does not show worsening of the Plaintiff's musculoskeletal or gastrointestinal impairments to account for the minimal work capacity that the VA and Dr.

19

Sharma indicate. [Tr. 31]. The ALJ explained that he gave little weight to the 30 percent evaluation to the Plaintiff's irritable bowel syndrome because all the pertinent medical records after July 2012 suggest that it is controlled on medication, such as over-the-counter Imodium. [Tr. 21]. Although the ALJ noted that the Social Security regulations are different from the VA's disability determination, the Court finds that the ALJ opinion's was not meaningless boilerplate.

The Plaintiff asserts that the instant matter is similar to the facts in LaRiccia. The Court disagrees. In LaRiccia, the Sixth Circuit noted that it could not credit the ALJ's reasons for the weight afforded to the VA's disability determination because the reasons "do not accurately reflect the approaches taken in the two systems." LaRiccia, 549 F. App'x at 388. Here, the ALJ discounted some of the VA's percentages by relying on other objective evidence. Accordingly, the Court finds the Plaintiff's argument not well-taken.

Finally, the Plaintiff argues that the ALJ showed general disdain for veterans and the VA rating. For grounds, the Plaintiff highlights several comments the ALJ made during the hearing:

> Q. I got you. Everybody works on their VA rating. Okay, so you haven't worked since then, okay. And who do you live with?
>
> * * *
>
> ALJ: You don't have to rush, by the way. Some people feel like they just got to pour it all out. Take your time, I'll listen as you have something worth hearing.
>
> * * *
>
> ALJ: He was recently rates [sic] 100 percent and he's got a whole-what list of things –well actually he was only rated at like 70 percent but they consider it an equivalent of 100. I don't know what that's all about, but it's fine.
>
> CLMT: Do you want me to explain it?
>
> * * *
>
> ALJ: And you can be sure that I'll apply every bit of what we have in the record. But I have read every page of it and I am familiar

20

with all of the reports so you don't need to regurgitate back, you
know, everything. Unless you feel like it's – you want to just make
a record of hearing yourself talk.

[Tr. 36, 38-39].

As mentioned above, the Court begins with the presumption that the ALJ's decision was honest and made with integrity. This presumption can only be overcome by convincing evidence that a risk of actual bias or prejudgment is present. Campbell, 2014 WL 4928903, *2   (quoting Collier, 108 F. App'x at 363-64). The Court has reviewed the comments above, along with the transcript in the record, and finds that the Plaintiff has not met his burden in showing a risk of actual bias or prejudgment. Moreover, as noted above, the Plaintiff failed to raise this issue at the Appeals Council. Accordingly, the Court finds the Plaintiff's argument not well-taken.

### C.      Non-examining Consultants

The Plaintiff argues that substantial evidence does not support the residual functional capacity evaluation due to the reliance upon flawed opinions from non-examining, DDS consultants. The Plaintiff asserts that the ALJ called them "experts" at the hearing, but there is no evidence of any special expertise. In addition, the Plaintiff argues that while the ALJ stated the DDS opinions took into consideration the evidence as a whole, the DDS opinions were provided prior to submission of all of the VA records, including Dr. Sharma's assessment.

The Commissioner responds that the ALJ considered the evidence as a whole and that the ALJ was justified in giving great weight to the State Agency doctors. The Commissioner argues that the ALJ complied with Social Security 96-6p and considered the evidence as a whole.

With respect to the Plaintiff's mental limitations, the ALJ gave the medical consultants opinions great weight because the evidence supported their opinion. [Tr. 22]. The ALJ noted that great weight was given to the reviewing medical consultant for the State agency that the Plaintiff

21

can meet the mental demands of simple and detailed tasks but not complex tasks. [Tr. 22]. The ALJ explained that the Plaintiff remained responsible for child care after his alleged onset date, he performed semiskilled work activity into August 2012, and the evidence does not support the significant worsening of mental functions after August 2012. [Tr. 21]. The ALJ gave little weight to the state agency opinion that the Plaintiff can perform work that involves only infrequent change because the evidence overall shows that the Plaintiff is able to adopt and respond in the contest of reasonable or customary support. [Tr. 22].

The Plaintiff argues that the ALJ did not progressively or more rigorously test the opinions of the DDS consultants. The Court disagrees. The ALJ noted that these opinions were only reviewing physicians but that the overall evidence is consistent with their opinions. The ALJ explained that the Plaintiff's daily functioning is consistent with the medical consultants and then later in the opinion addresses the objective evidence. Although the Plaintiff asserts that the consultative examiners did not review Dr. Sharama's 2014 assessment, the Court finds that the ALJ considered Dr. Sharma's assessment with the evidence as a whole. Moreover, the Court finds that the ALJ's comment during the hearing that the consultative examiners are "experts" is not a ground to remand this case. Accordingly, the Court finds the Plaintiff's argument not well-taken.

## VI. CONCLUSION

Based upon the foregoing, the Court **DENIES** the Plaintiff's Motion for Summary Judgment [**Doc. 12**] and **GRANTS** the Defendant's Motion for Summary Judgment [**Doc. 14**]. The Court will **DISMISS** this case.

**IT IS SO ORDERED.**

ENTER:

_____s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge